IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DORREL ANTHONY BRYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 305-084 |
| | ) | |
| CORRECTIONS CORPORATION OF | ) | |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate incarcerated at the Federal Correctional Complex in Coleman, Florida, commenced this civil action pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). He is proceeding *pro se* and *in forma pauperis*. Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A. The Court may dismiss a complaint for failure to state a claim only where it appears beyond doubt that a *pro se* litigant can prove no set of facts that would entitle him to relief. Hughes v. Rowe, 449 U.S. 5, 10 (1980) (*per curiam*).

## I. BACKGROUND

On July 25, 2003, Plaintiff went to the dining hall at McRae Correctional Facility in McRae, Georgia, for dinner. According to Plaintiff, there was a metallic object in the food that got lodged in his throat and caused him to choke. Plaintiff maintains that he then coughed up blood, food, and a piece of metal. Upon reporting a burning sensation in his throat and a "draining" feeling in his stomach to Defendant Orengo, Plaintiff states that he was merely offered another plate of food. (Compl., p. 5). Dissatisfied with that response, Plaintiff then went to Defendant Galloway, who reportedly took Plaintiff to see Defendant Wells, a nurse at McRae. However, Plaintiff maintains that Nurse Wells did not examine him but merely told him to drink fluid and see if the object passed naturally. Plaintiff states that on July 28, 2003, he filed a written report to Defendant Snoddy, an Assistant Warden at McRae, describing his situation, and "thereafter the staff attempted to address [his] medical needs." (Id.).

Plaintiff states that in addition to reporting the incident to prison officials as described above, he filed a "written grievance report" on July 25, 2003 and July 27, 2003. (Id. at 3). Those reports are attached as Exhibit 2 to the complaint. The "grievance report" is a document entitled "Corrections Corporation of American Incident Statement" and dated July 25, 2003. Attached to the Incident Statement is a written narrative dated July 27, 2003 in which Plaintiff explains that he was writing the statement because medical personnel informed him that there was no record of the July 25th incident in his file. (Compl., Ex. 2, Stm. dated July 27, 2003, p. 3). Under the question in the complaint that asks whether any adverse decision was appealed to the highest level possible in the administrative procedure,

2

Plaintiff states that he was given belated medical attention and then filed his lawsuit. (Compl., p. 4). However, Plaintiff also maintains that he did not utilize the prison grievance procedure because shortly after the incident, he was transferred from McRae to the Federal Correctional Institution in Yazoo City, Mississippi. (Id.). "If there were any further steps to be taken at McRae, such could not be done from Yazoo." (Id.).

## II. DISCUSSION

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Furthermore, 42 U.S.C. § 1997e(c)(1) provides that the Court shall dismiss any action brought under 42 U.S.C. § 1983, or any other Federal law, by a prisoner if the action fails to state a claim upon which relief can be granted on its own motion or the motion of a party. In the Eleventh Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998); see also Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998) (finding that a prisoner lawsuit in which the denial of a grievance was not appealed must be dismissed under § 1997e).

Furthermore, the Eleventh Circuit Court of Appeals has held that as a result of the Prison Litigation Reform Act, ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), § 1997e requires that all claims be submitted to the prison grievance procedure "even if the relief offered by that program does not appear to be 'plain, speedy, and effective,' before filing those claims in federal court. The judicially created futility and inadequacy doctrines

3

do not survive the PLRA's mandatory exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998). The Court no longer has discretion to waive the exhaustion requirement. Id. at 1325. Indeed, the Supreme Court has clarified "that § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences."[1] Porter v. Nussle, 534 U.S. 516, 520 (2002).

Here, Plaintiff has not sufficiently alleged exhaustion of administrative remedies. His "written grievance report" is actually an Incident Statement that is addressed to no one in particular and appears to have been written for inclusion in Plaintiff's medical file. Nor does there appear to be any signature of a prison official that would indicate to whom the Incident Statement may have been submitted. More importantly, even if the Incident Statement were to be considered a written grievance, there is absolutely no indication that such a grievance was pursued up through the administrative ranks at McRae. For example, if a prisoner is dissatisfied with the response to a grievance received from the Warden, he may then appeal to the CCA Managing Director for Division VI; the CCA Grievance Process is considered to be exhausted on the particular issue raised in the grievance once the grievance has been responded to by the CCA Managing Director.[2] As Plaintiff has not alleged that he received

---

[1]Suits regarding "prison conditions" include claims "with respect to the conditions of confinement or the effects of action by government officials on the lives of persons confined in prison." Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000)(per curiam). Accordingly, Plaintiff's complaints about his food and medical care are subject to the administrative exhaustion requirement.

[2]The Court is familiar with the administrative remedies available at McRae by virtue of addressing numerous complaints filed by prisoners at that institution. In one such case, an affidavit was filed that described the CCA Grievance Process. See Pri-Har v. Corrections Corp. of Am., Inc., CV 304-007 (S.D. Ga. Jan. 23, 2004), doc. no. 18. The Court has the authority to take judicial notice of its own documents. United States v. Rey, 811 F.2d 1453,

a response to his "grievance" from the Warden, let alone appealed the Warden's decision to the CCA Managing Director, he has not alleged exhaustion of administrative remedies.

As noted above, the Court is aware that Plaintiff maintains he was transferred to Yazoo City shortly after the July 25, 2003 incident at McRae. However, that does not excuse Plaintiff from the administrative exhaustion requirement. That is, just as there are administrative procedures available at privately run facilities like McRae, there are also administrative procedures available at facilities run by the Bureau of Prisons. "The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, a federal prisoner must:

> pursue the specific four-step procedure established by the Bureau of Prisons. 28 C.F.R. § 542.10 (2001); see Funches v. Reish, 97 Civ. 7611, 1998 WL 695904, at *2 (S.D.N.Y. Oct. 5, 1998) (Sand, J.) (detailing four-step procedure: (1) inmate must first seek informal resolution of complaint; (2) if no resolution achieved, prisoner may submit written request for relief on designated form to warden; (3) if request denied, inmate has twenty days to file appeal with Bureau of Prisons Regional Director; (4) upon adverse determination by Regional Director, inmate has thirty days to appeal to Bureau of Prisons General Counsel). . . . . Tort claims, however, are not subject to the same four-part administrative procedure that must be exhausted to pursue other claims. See 28 C.F.R. §§ 542.10, 542.12, 543.30 (2001). A prisoner need only file an administrative tort claim with the Bureau of Prisons Regional Office. See 28 C.F.R. § 543.31(c) (2001). Denial of that claim constitutes the final administrative action. See 28 C.F.R. § 543.32(6) (2001).

---

1457 n.5 (11th Cir.1987) ("A court may take judicial notice of its own records and the records of inferior courts."). Thus, the Court takes judicial notice of the requirement for appealing to the CCA Managing Director for Division VI in order to exhaust administrative remedies.

Hylton v. Federal Bureau of Prisons, No. CV 00-5747(RR), 2002 WL 720605, at * 1-2 (E.D.N.Y. Mar. 11, 2002).

In addition, there is a specific time line which must be followed during the administrative process. The deadline for completing informal resolution and submission of the "Request for Administrative Remedy" (BP-9) at the institutional level is twenty (20) calendar days following the date on which the events forming the basis of the request for administrative relief occurred. 28 C.F.R. § 542.14(a). However, an extension of time may be granted upon a prisoner's showing of a valid reason for delay, including "an extended period in transit. . . ." Id. § 542.14(b). There is no indication that upon his arrival at Yazoo City, Plaintiff even attempted to file a BP-9, let alone follow that up with a Regional Appeal (BP-10) or an appeal to the Bureau of Prisons Regional Counsel.[3] Likewise, even if the Court were to assume that this was a Federal Tort Claims Act case, there is no indication that Plaintiff filed an administrative tort claim with the Bureau of Prisons Regional Office.

---

[3]Notably, 28 C.F.R. § 542.10(c) states that if an inmate raises an issue in a request or appeal that cannot be resolved as part of the Bureau of Prisons Administrative Remedy Program, the inmate will be referred to the appropriate statutorily mandated procedures. Plaintiff does not say that he sought administrative relief at Yazoo City and was denied. He simply states that if any further administrative steps were available at McRae, they could not be accomplished from Yazoo City. (Compl., p. 4). There is no support for the conclusion that no administrative remedies were available upon his transfer. To the contrary, the Court is familiar with other cases filed in this District in which federal inmates are transferred between prisons run by the Bureau of Prisons and private contractors and the appropriate administrative remedy forms remain available regardless of the prisoner's location. See, e.g., Comacho v. Corrections Corporation of America, CV 304-022 (S.D. Ga. Apr. 8, 2004), doc. nos. 26, 29. Plaintiff fails to explain why, even after he was relocated to Yazoo City, he did not proceed with pursuing administrative remedies.

6

In sum, Plaintiff has not completed the requisite steps necessary to bring his lawsuit in federal court, and his claims are not properly before this Court. 42 U.S.C. § 1997e(a) requires that a prisoner exhaust administrative remedies before filing a lawsuit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (exhausting administrative remedies is "precondition to filing an action in federal court"); Miller v. Tanner, 196 F.3d 1190, 1192-93 (11th Cir. 1999) (same). Therefore, the Court **REPORTS** and **RECOMMENDS** that this case be **DISMISSED** without prejudice and that this civil action be **CLOSED**.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that pursuant to 42 U.S.C. § 1997e, this case be **DISMISSED** without prejudice and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 23rd day of September, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

7